UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-61242-CIV-SIMONTON

JEFFREY MANNERS,

    Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security
Administration,

    Defendant.
_____/

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

Presently pending before the Court is *pro-se* Plaintiff's Motion for Summary Judgment, ECF No. [23], and Defendant's Motion for Summary Judgment with Supporting Memorandum of Law and Opposition to Plaintiff's Motion for Summary Judgment, ECF No. [24]. Based upon the consent of the parties, the Honorable Kathleen M. Williams, United States District Judge, has referred the matter to the undersigned to take all necessary and proper action as required by law, through and including trial by jury and entry of final judgment, ECF No. [22]. The summary judgment motions are now ripe for disposition.

For the reasons stated below, the undersigned GRANTS the Plaintiff's Motion for Summary Judgment, ECF No. [23], and DENIES the Defendant's Motion for Summary Judgment, ECF No. [24].

    I.    PROCEDURAL BACKGROUND

On November 6, 2013, the Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income. (R. 223).[1] The Plaintiff alleged disability commencing on July 1, 2013. (R.224). On September 21, 2015, a hearing was held before

---

[1] The letter "R", followed by a page number is used to designate a page in the Administrative Record, which is contained in ECF No. [17].

an Administrative Law Judge ("ALJ"), where the Plaintiff testified and was represented by counsel. (R. 197-222). A vocational expert ("VE") also testified at the hearing. (R. 217-222). On December 10, 2015, the ALJ issued an opinion denying the Plaintiff's applications. (R. 179-191). The Appeals Council denied the Plaintiff's request for review on April 30, 2016. (R.168-174). The Appeals Council's decision became the final decision of the Commissioner, and thereafter the Plaintiff commenced the present action seeking judicial review of the administrative proceedings pursuant to 42 U.S.C. § 405(g).

## II. LEGAL ISSUES PRESENTED

In his Motion for Summary Judgment, the Plaintiff contends that the ALJ committed errors which precluded the Plaintiff from obtaining benefits. In his Motion, the Plaintiff provides a "summary of errors and contradictions" in 20 numbered paragraphs. The alleged errors can be summarized as the Plaintiff alleging that the ALJ did not properly consider the medical evidence of record, did not properly develop the Plaintiff's Residual Functional Capacity and erred in considering the Plaintiff's credibility.

The Defendant contends in its Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment that substantial evidence supports the ALJ's evaluation of the medical opinion evidence and the ALJ's residual functional capacity finding ("RFC"), and that the ALJ properly determined that the Plaintiff's statements were not fully credible.

## III. STANDARD OF REVIEW

Judicial review of the ALJ's decision in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's factual findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Crawford v. Comm'r of Soc. Sec.* 363 F.3d 1155, 1158 (11th Cir. 2004); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial

evidence" is more than a scintilla, but less than preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Bloodworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

When reviewing the evidence, the Court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence "preponderates" against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Baker v. Sullivan*, 880 F.2d 319, 321 (11th Cir. 1989). This restrictive standard of review, however, applies only to findings of fact. No presumption of validity attaches to the Commissioner's conclusions of law, which are reviewed *de novo*, including the determination of the proper standard to be applied in reviewing claims. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991) ("The Commissioner's failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."); *Martin v. Sullivan*, 894 F.2d at 1529.

## IV.  FRAMEWORK FOR ANALYSIS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). An individual "shall be determined to be under a disability only if his . . . impairment [is] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other . . . substantial gainful work." 42 U.S.C. § 423(d)(2)(A).

The Social Security Administration applies a five-step sequential analysis to make a disability determination. 20 C.F.R. § 416.920(a).[2] The analysis follows each step in order, and as explained in more detail below, the analysis ceases if, at a certain step, the claimant is found, as a matter of law, either to be disabled or not disabled. Step one involves a determination of whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. § 416.920(b). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. § 416.972(b). If an individual has been participating in substantial gainful activity, he or she will not be considered disabled, despite the severity of symptoms, their age, education, and work experience, regardless of physical or mental impairment, and the analysis ends. *Id.* The analysis proceeds to step two if the individual is not engaging in substantial gainful activity.

At the second step, the claimant must establish that he has a severe impairment. Step two has been described as the "filter" which requires the denial of any disability claim where no severe impairment or combination of impairments is present. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). This step has also been recognized as a "screening" to eliminate groundless claims. *Stratton v. Bowen*, 827 F.2d 1447, 1452 (11th Cir. 1987). The ALJ makes a severity determination regarding a classification of the claimant's medically determinable impairment or combination of impairments. 20 C.F.R.

---

[2] Plaintiff has claimed disability under both Title II, which governs disability insurance benefits and has insured status requirements, and Title XVI, which governs entitlement to Supplemental Security Income where the insured status requirements are not met. The same analysis is used under both Titles to determine whether a claimant is disabled, and identical regulations have been promulgated with respect to the disability determination. In this Order the claims are treated together, and only the regulations applicable to Title XVI, contained in 20 C.F.R. Part 416, have been cited; the identical Title II regulations, contained in 20 C.F.R. Part 404, have been omitted.

§ 416.920(c). To be severe, an impairment or combination of impairments must significantly limit an individual's ability to perform basic work activities. The regulations define these activities as the abilities and aptitudes necessary to do most jobs, and include physical functions; the capacity to see, hear, and speak; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to others in usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.921.

The ALJ need only find that the claimant has "at least one" severe impairment in order to advance to step three of the analysis. *Jamison*, 814 F.2d at 588. "There is no need for an ALJ to identify every severe impairment at step two." *Tuggerson-Brown v. Comm'r of Soc. Sec.*, No. 13-14168, 2014 WL 3643790, at *2 (11th Cir. Jul. 24, 2014). Thus, as long as one severe impairment is found, there can be no error at step two based on the failure of the ALJ to identify other severe impairments since the existence of other severe impairments would not change the outcome at step two. Stated another way, the only consequence of the analysis at step two is that, if the ALJ finds no severe impairment or impairments, he should reach a conclusion of no disability, and the analysis ends. As long as there is one severe impairment, the analysis proceeds to step three regardless of whether there are other severe impairments.

The third step requires the ALJ to consider if the claimant's impairment or combination of impairments are at the level of severity to either meet or medically equal the criteria of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1. ("the Listings"). 20 C.F.R. §§ 416.920(d), 416.925, 416.926. A claimant is considered to be disabled, and is awarded benefits without further analysis, if his or her impairment or combination of impairments: 1) is severe enough to meet or to medically equal the criteria of a Listing; and, 2) meets the duration requirement under 20 C.F.R. § 416.909. If the claimant's

impairment or combination of impairments does not meet these two criteria, then the ALJ must proceed to the fourth step to determine if the claimant is nevertheless disabled.

Step four is a two-pronged analysis that involves a determination of whether the impairments prevent the claimant from performing his past relevant work. First, the ALJ makes a determination of the claimant's "RFC" as described in 20 C.F.R. §§ 416.920(e), 416.945.[3] In making this determination, the ALJ must consider all of the claimant's impairments, regardless of the level of severity. 20 C.F.R. §§ 416.920(e), 416.945; SSR 96-8p; *Tuggerson-Brown,* 2014 WL 3643790, at *2 (an ALJ is required to consider all impairments, regardless of severity, in conjunction with one another in performing the latter steps of the sequential evaluation).

The second phase of step four requires a determination of whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. § 416.920(f). Relevant work has been defined as work performed within the last 15 years. This work must have been performed long enough so that: 1) the claimant could learn to do the job; and, 2) be considered substantial gainful activity. 20 C.F.R. §§ 416.960(b), 416.965. If the claimant possesses the residual functional capacity to do his or her past relevant work, the claimant is considered not disabled and the inquiry ends.

If a claimant is not able to perform her past relevant work, the ALJ progresses to the fifth step. At this step, the burden of production shifts to the Commissioner to show that other work that Plaintiff can perform exists in significant numbers in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); 20 C.F.R. § 416.920(g). In making this determination, the ALJ considers a claimant's RFC, age, education, and work experience to determine if the claimant can perform any other work. 20 C.F.R. §

---

[3] Residual Functional Capacity measures a person's ability to do physical and mental work activities on a sustained basis despite limitations caused by impairments.

416.920(g). If the claimant can perform other work, the ALJ will make a finding that the claimant is not disabled.

V. THE SEQUENTIAL ANALYSIS PERFORMED BY THE ALJ

In the case at bar, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 1, 2013, the alleged onset date. (R. 181).

At step two, the ALJ found that Plaintiff possessed the severe impairments of disorder of the nervous system, obesity, asthma, and vertigo. (R. 181).

In step three, the ALJ found that Plaintiff's impairment or combination of impairments failed to meet or medically equal one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (R. 181).

In assessing step four, the ALJ found that Plaintiff had the RFC to perform medium range of work as defined in 20 C.F.R. and 416.967(c) as follows

> The claimant can lift and carry 50 pounds occasionally and 25 pounds frequently; stand and walk 6 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday. The clamant can frequently climb stairs, and can occasionally climb ladders, ropes and scaffolds. The claimant is able to frequently balance, stoop, kneel, crouch and crawl.

(R. 182).

The ALJ concluded that given the Claimant's RFC, the Plaintiff was able to perform past relevant work as an auto print developer, stock clerk[4] and a retail sales clerk. (R. 190).

Since the ALJ found that the Plaintiff was able to perform his past relevant work, the inquiry ended with a finding of no disability, and the ALJ did not proceed to step five.

---

[4] The undersigned notes that the finding that the Plaintiff could perform past relevant work as a stock clerk is not supported by the ALJ's RFC and analysis, as conceded by the Defendant, ECF No. [24] at 15-16 n.7. This error is harmless, however, since the findings regarding the positions of auto print developer and retail sales clerk were supported by the testimony of the VE based on the RFC determination of the ALJ. Since this case is being remanded for further proceedings and re-evaluation of the RFC based on those proceedings, this issue is moot in any event.

7

## VI. PLAINTIFF'S BACKGROUND AND MEDICAL HISTORY

### A. Background

The Plaintiff was 59 years old on July 1, 2013, the alleged onset date. (R. 232). He is insured for purposes of Title II through December 31, 2018. (R. 181). At the time of his hearing, the Plaintiff weighed 255 pounds and was 6'4" tall. The Plaintiff has earned three associate degrees. (R. 203). The Plaintiff does not drive, and lives alone in an apartment. (R. 206). The Plaintiff initially alleged that he became totally disabled due to vertigo, deep vein thrombosis, psoriatic arthritis, diverticulitis, psoriasis, and asthma. (R. 363). The Plaintiff later alleged disability due to fatigue and hand pain and back pain. (R. 210).

A description of the testimony adduced at the hearing is set forth below. The relevant medical records of the Plaintiff are set forth in the discussion of the ALJ's RFC determination.

### B. Hearing Testimony

#### 1. Plaintiff's Testimony

At the hearing, the Plaintiff was represented by counsel and testified that in August, 2013, he became unable to work because of vertigo. (R. 202). The Plaintiff stated that he has three associate degrees and was not working at the time of the hearing. (R. 203). The Plaintiff stated that he has a current driver's license but does not drive because he does not want to be behind the wheel due to his condition. (R. 204). The Plaintiff testified that he is not able to take care of his personal hygiene "in the normal way" as he is unable to take a shower standing up due to vertigo. (R. 205). The Plaintiff instead sits on the edge of the tub and quickly rinses off. (R. 205). The Plaintiff testified that he is able to shave his beard and head. (R. 205). The Plaintiff stated that he is able to do the laundry but housekeeping consists of "running a dust mop across the

floor." (R. 205). In terms of cooking, the Plaintiff stated that he can throw something in the oven or stove. (R. 206). The Plaintiff testified that he does not go out socially but does attend church weekly and goes to family events. (R. 206). The Plaintiff testified that he lived alone in a second floor apartment. (R. 206). The Plaintiff stated that he had previously worked as a stocker at Walgreens, Walmart, and J.C. Penney, but he left his last position at Walgreens because he could no longer perform his job duties, including bending, kneeling, and lifting. (R. 207). The Plaintiff testified that his deep vein thrombosis first occurred in April of 2012, he received treatment, returned to work, and has not had any regular problems since. (R. 208). The Plaintiff stated that he cannot stand on his feet in one place for longer than 15 minutes as he will experience severe pain in both of his legs. (R. 209). The Plaintiff stated that his psoriatic arthritis manifests itself in the form of extreme pain in his hand, knees, and back (R. 209). The Plaintiff testified that he has problems grasping items, drops items, and can't open jars or cans. (R. 210). The Plaintiff stated that he has back pain and was told that he had degenerative disc disease and lumbar radiculitis, although he no longer had lumbar radiculitis. (R. 210-211). The Plaintiff stated that his problem with bending is not because of the pain in his back but is instead from vertigo. (R. 211). The Plaintiff stated that he also has discomfort after sitting for 15-20 minutes. (R. 211). The Plaintiff explained that the vertigo causes him to feel as if his head is spinning and can last anywhere from a day to months. (R. 211-212). The Plaintiff reported that he has asthma and uses an inhaler almost every day. (R. 212). The Plaintiff testified that he also has diverticulosis that causes him to stay close to the bathroom. (R. 213). The Plaintiff stated that he takes medication for his diverticulosis, psoriatic arthritis, DVT, and vertigo. (R. 213). The Plaintiff testified that the medication helps his vertigo although he has daily headaches from the vertigo. (R. 214). The Plaintiff stated that he had three episodes of blacking out

in November 2014, December 2014, and April 2015; but, he has had negative MRIs and MRAs. (R. 216). The Plaintiff testified that he was absent frequently from work due to vertigo, up to three weeks in a month. (R. 216). The Plaintiff testified that he uses a cane to walk that was given to him by a friend, not a doctor. (R. 218).

### 2. Vocational Expert Testimony

Olga Idrissi testified as an impartial vocational expert ("VE"). (R. 217-221). The VE testified that the Plaintiff had past relevant work as an automatic print developer, a stock clerk, and a retail sales clerk, cashier. (R. 218). The ALJ asked the VE if the Plaintiff could perform his past relevant work based on the following hypothetical: "the claimant is able to do medium work, which is lift and carry 50 pounds occasionally, 25 frequently, stand and walk six hours and sit six hours in an eight-hour workday." (R. 219). The VE responded that the Plaintiff would be able to perform past work as an automatic print developer, and retail sales clerk, cashier, checker. (R. 219). The VE testified that if the Plaintiff utilized a cane he would not be able to perform any of the past jobs. (R. 220). When asked what the effect would be if the RFC was adjusted to reflect that the claimant is not able to bend, stoop or crouch, the VE responded that the claimant would not be able to perform past jobs. The VE was then presented with the following hypothetical and asked if the individual would "be competitive in terms of obtaining and maintaining work:[5] "Assume an individual of the claimant's age, education and vocational profile. This individual is able to do light work which is lift and carry 20 occasionally, 10 frequently. Okay, stand and walk four hours, sit four hours. This individual must not climb, stoop or crouch. This individual uses a cane to walk." (R. 220). The VE responded that such an individual would not be competitive in terms of obtaining and maintaining work. When asked by the Plaintiff's attorney whether an

---
[5] This hypothetical was not expressly limited to past relevant work.

individual who was off task 10 to 15 percent of the time could perform any of the jobs, the VE responded "No." (R. 221). The VE also testified that an individual who was absent more than two days a month would also not be able to perform any of the jobs. (R. 221).

VII. LEGAL ANALYSIS

A. The Opinion Evidence of Record

1. The Framework for Analyzing Medical Opinions

An ALJ is required to consider and explain the weight given to medical opinions such as those of the treating, examining, and consulting physicians. *See McCloud v. Barnhart*, 166 F. App'x 410, 419 (11th Cir. 2006). The opinion of a treating physician as to the nature and severity of an impairment is entitled to controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 416.927(c)(2). "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary. The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

Further, the ALJ must consider the following six factors in weighing the opinion of a treating physician: the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; supportive evidence; consistency with the record as a whole; the area of specialization; and, other factors such as the familiarity of the physician with the evidentiary requirements of the Social Security disability program, and the extent to which the physician is familiar with other evidence in the record. 20 C.F.R. § 416.927(c).

In *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011), the Eleventh Circuit Court of Appeals concisely set forth the following guidelines to apply in evaluating an ALJ's treatment of medical opinions:

> Absent "good cause," an ALJ is to give the medical opinions of treating physicians substantial or considerable weight. Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. With good cause, an ALJ may disregard a treating physician's opinion, but he must clearly articulate the reasons for doing so.
>
> Moreover, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence. Therefore, when the ALJ fails to state with at least some measure of clarity the grounds for his decision, we will decline to affirm simply because some rationale might have supported the ALJ's conclusion.

(internal quotation marks and citations omitted). In *Winschel*, the decision of the ALJ was reversed because the only reference to the treating physician noted that the claimant had seen the doctor monthly, but did not even mention the doctor's medical opinion. In addition, the ALJ failed to discuss the pertinent elements of an examining physician's medical opinion. The Court noted that it was possible that the ALJ had considered and rejected those opinions, but without clearly articulated reasons, the Court could not determine whether the ALJ's conclusions were supported by substantial evidence. 631 F.3d at 1179. Similarly, the ALJ's rejection of a treating physician's opinion was error requiring remand where the ALJ had failed to reference the opinions in his decision and had merely noted that the claimant had been treated by the physicians, *Miller v. Barnhart*, 182 F. App'x 959, 964 (11th Cir. 2006); and, where the reasons given for according no weight to the opinion – that the opinion was internally inconsistent and at

12

odds with other evidence in the record – was not supported by substantial evidence, *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

On the other hand, in *Rosario v. Comm'r of Soc. Sec.*, 490 F. App'x 192, 194-95 (11th Cir. 2012), the Eleventh Circuit found that the ALJ had not erred in giving little weight to the opinions of the claimant's treating psychiatrist, where the ALJ indicated she had done so "because they were inconsistent with [the doctor's] own findings, notes from the treatment plan, and the overall medical evidence," and the decision noted one example from the medical records. 490 F. App'x at 194-95. *Accord Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (ALJ's rejection of treating physician's opinion was supported by substantial evidence where ALJ cited examples of inconsistencies with treatment notes and claimant's own admissions of what she could do).

In sum, if the ALJ fails to give at least great weight to the opinion of a treating physician, he must provide a sufficiently detailed analysis with examples to demonstrate why that opinion is discounted, and provide a rationale that will enable a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.

Applying these principles, the Eleventh Circuit recently issued two unpublished opinions where the district court's orders affirming the ALJ's denial of benefits was vacated and the cases were remanded for failure to adequately weigh the medical opinions in the record. In *Martinez v. Acting Comm'r of Soc. Sec.*, No. 15-14798, 2016 WL 4474675, at *2 (11th Cir. 2016), the Court rejected the ALJ's decision to not give the plaintiff's treating physician's opinion controlling weight because the ALJ found the opinions to be contradicted by the treating physician's contemporaneous clinical notes and other evidence in the record. *Id.* at *2. After reviewing the treatment notes and other medical records, the Court found that the opinions of the treating physician were not

inconsistent with the other records. *Id.* at *3. The Court thus concluded that had the treating physician's opinion been given controlling weight, the opinions would have been inconsistent with the ALJ's ultimate finding that the claimant was not disabled. *Id.* As such, the Court reversed and remanded the case on that issue so that the ALJ could properly weigh the treating physician's opinions.

In *Baez v. Commissioner of Social Security*, No. 15-13941, 2016 WL 4010434, *3 (11th Cir. 2016), the reviewing Court concluded that the ALJ erred in failing to assign weight to the opinion of the plaintiff's treating physician. *Id.* at *4. In so doing, the Court stated that in evaluating medical opinions, the ALJ should consider factors such as the examining relationship, the treatment relationship, the doctor's specialization, whether the opinion is amply supported, and whether the opinion is consistent with the record. *Id.,* citing 20 C.F.R. §§ 404.1527(c), 416.927(c).

2. <u>The ALJ's Evaluation of the Medical Opinion Evidence of Record</u>

While some of the Plaintiff's arguments do not necessitate a remand, the argument taken broadly, that the ALJ failed to consider the opinion evidence or records of his treating physicians necessitates a remand.[6] The undersigned will first address the

---

[6] The Plaintiff's contention that it was error for the ALJ to claim that he does not have a hearing impairment when the Plaintiff is not alleging a hearing impairment is without merit. Even if the Plaintiff is not contending that he does not suffer from a hearing impairment, the ALJ's consideration of the record and determination that the Plaintiff did not suffer from a hearing impairment is not in error as there is evidence in the record that the Plaintiff suffered from a hearing impairment. Even if such consideration was construed as an error, such error is harmless as the ALJ's conclusion and the Plaintiff's contention are the same. The same is true as related to the Plaintiff's contention that he has never had psoriasis on his elbows or on his calves, only his hands. The Plaintiff's contention related to the AJL's consideration of the Plaintiff's obesity is also without merit. The ALJ has an obligation to consider all functional limitations in developing the Plaintiff's RFC, and it was not error to consider the Plaintiff's weight of 259 pounds at 6'4'' as falling within an overweight category. As stated by the Defendant, a body mass index of 31.5 qualifies as obese by the Centers for Disease Control. www.cdc.gov/obesity/adult/defining/html. Finally, as related to the Plaintiff's case law

Plaintiff's challenge to the ALJ's consideration of his medical records as related to his vertigo and will then address the records as related to the Plaintiff's psoriatic arthritis.

### a. <u>Vertigo</u>

The Plaintiff challenges the ALJ's contention that his vertigo is in remission. The Defendant contends that the ALJ properly considered the objective medical evidence. While the ALJ cites to one treatment note indicating that the Plaintiff's vertigo was in remission in 2013, the ALJ incorrectly states that the Plaintiff needed no further testing or treatment past that date. A review of the record demonstrates that substantial evidence does not support the ALJ's conclusion. While Dr. Gelblum, Plaintiff's treating neurologist, noted improvement in the Plaintiff's vertigo in a treatment note dated April 5, 2013; by May 2013, the Plaintiff was seen because of a severe exacerbation of vertigo, and difficulty working. (R. 1304, 1312). By June 2013, Dr. Gelblum noted that the Plaintiff was experiencing persistent vertigo which interfered with his gait as well as occupational activities. (R. 1316). In July 2013, treatment notes indicate that the Plaintiff had to leave work because he was unable to stand up behind the counter due to his vertigo. (R. 1335). The last treatment note from Dr. Gelblum, dated January 24, 2014, states that the Plaintiff was experiencing episodic recurrence of vertigo which interfered with his occupational pursuits and activities of daily living. (R. 1342). While the ALJ addresses Dr. Gelblum's note as related to the Plaintiff's brief remission, the ALJ does not address the worsening of the Plaintiff's symptoms, nor does the ALJ assign a weight to the opinion of Dr. Gelblum.

Further treatment notes from the Plaintiff's subsequent treating neurologist, Dr. Tarras, state that on May 27, 2015, the Plaintiff had worsening dizziness and worsening

---

included in the Plaintiff's Motion, none of the cases are binding on this Court and the Plaintiff has not presented any evidence that the ALJ was biased in favor of denial.

true vertigo. (R. 1898). While the ALJ points to a note dated May 26, 2015, by Dr. Tarras stating that increased vertigo may be the result of increased medication dosage, after the dosage was adjusted, the Plaintiff continued to experience increased dizziness, vertigo and unsteadiness. (R. 1926). On July 27, 2015, Dr. Tarras found that while the Plaintiff had initially experienced some improvement, by the end of June the Plaintiff had increasing vertigo and had several brief episodes of blacking out. (R. 1926). Finally, on January 12, 2016, Dr. Tarras completed a Chronic Vertigo/Meniere's Disease Impairment Questionnaire. (R. 1969-1973). In the questionnaire, Dr. Tarras stated that the Plaintiff's prognosis was "frequent recurrent vertigo despite extensive treatment." (R. 1969). Dr. Tarras found that Plaintiff had an average of 1-3 vertigo attacks a week with the duration ranging from hours to several days. (R. 1970). Dr. Tarras states that the Plaintiff's symptoms were severe enough to interfere significantly with the Plaintiff's ability to concentrate, and the Plaintiff was incapable of tolerating even low work stress. (R. 1971-1972). Dr. Tarras found that the Plaintiff would be likely to be absent from work more than three times a month. (R. 1972). The ALJ's contention that Dr. Tarras' records are fully consistent with the ALJ's findings is not accurate. The ALJ failed to discuss Dr. Tarras' vertigo questionnaire, and failed to assign a weight to Dr. Tarras' opinions, making review by the Court difficult, especially given the fact that Dr. Tarras was the Plaintiff's treating neurologist and his opinion contradicts the findings of the ALJ. Therefore, the case should be remanded for the ALJ to more fully discuss the treatment records of the Plaintiff and to assign a weight to the opinions of the Plaintiff's treating physicians, Drs. Tarras and Gelblum.

b. <u>Psoriatic Arthritis</u>

Broadly speaking, the Plaintiff contends that the ALJ erred in considering the medical opinion evidence as related to his psoriatic arthritis. The Defendant contends

that the ALJ properly considered the opinion evidence, and other than the Plaintiff's conclusory statement that he cannot perform medium work due to his psoriatic arthritis, the Plaintiff does not demonstrate how the medical record shows he is more limited than the ALJ found.

A review of the record demonstrates that the Plaintiff was treated for psoriatic arthritis starting in December 2013. (R. 1416). While the early records do not contain much detail, they do state that the Plaintiff received treatment from Dr. Sofman from December 2013 through February 2014 related to his elbows, hands, right knee, and right calf. (R. 1416-1421). The record also contains progress notes from Dr. Miranda, the Plaintiff's treating rheumatologist who saw the Plaintiff on five occasions from March 23, 2015 through September 2, 2015. (R. 1948-1961). The treatment note dated March 23, 2015, states that the Plaintiff had a "diagnosis of psoriatic arthritis with limitation of cervical and lumbar ROM, dactylitis and severe psoriasis with pustules mainly on palms and soles." (R. 1948). The Plaintiff reported difficulty grabbing, grasping, standing or sitting for a long time and difficulty walking. (R. 1948). On May 29, 2015, Dr. Miranda reported that the Plaintiff's joint pain improved significantly with medication. (R. 1951). On July 2, 2015, the Plaintiff again complained of joint pain, while his psoriatic plaque was significantly improved. (R. 1954). At his last appointment with Dr. Miranda, the Plaintiff complained of joint pain, had swollen fingers, and had difficulty making a fist. (R. 1959). The Plaintiff reported stomach problems that had persisted throughout the year. (R. 1959).[7] Dr. Miranda assessed the Plaintiff with active psoriasis with pain in multiple joint sites. (R. 1960).

---

[7] In his Motion, the Plaintiff argues that the ALJ erred in claiming that the Plaintiff's diarrhea was resolved in 2014, when in fact that problem persisted throughout the year. Because the undersigned is remanding this case for the ALJ to more fully consider the opinion evidence or record, the ALJ shall address this concern along with the Plaintiff's

While the ALJ cites the Plaintiff's treatment notes as related to the Plaintiff's psoriatic arthritis, the ALJ failed to assign a weight to the opinions of the Plaintiff's treating physicians, most notably the opinions of Dr. Miranda. While it is not the role of the reviewing court to re-weigh the opinion evidence of record, because the case is being remanded for the ALJ to more fully consider the opinion evidence of record as related to the Plaintiff's other physical impairments, the ALJ shall also more fully consider the opinion evidence as related to the Plaintiff's psoriasis. Remand is also warranted because while there seemed to be some improvement with treatment, the treatment notes are not necessarily supportive of the ALJ's findings, and without the ALJ assigning a weight to those opinions, it is impossible for the Court to review the ALJ's decision. Finally, to the extent that the ALJ has failed to properly assess the opinion evidence as outlined above, the ALJ must now reconsider the Plaintiff's RFC taking into account those opinions

    B.  <u>The Determination of the Plaintiff's Credibility</u>

Plaintiff argues in a general fashion that the ALJ failed to properly assess the Plaintiff's credibility. The Defendant asserts that the ALJ properly found that the Plaintiff's statements were not fully credible.

In considering the Plaintiff's symptoms, the ALJ must follow a two-step process where it first must be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that could be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms. SSR 16-3p. Once this is shown, the ALJ must evaluate the intensity, persistence, and limiting effects

---

clarification that he did not see Dr. Krieger in March 2015 as stated by the ALJ. The Defendant concedes that it is not clear whether the ALJ was indicating that the Plaintiff generally received treatment from Dr. Krieger, or saw Dr. Krieger on that particular date.

of the claimant's symptoms to determine the extent that these limit Plaintiff's functioning. *Id*. If statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on a consideration of the entire case record. *Id.*

The responsibility of the fact-finder, the ALJ, is to weigh the Plaintiff's complaints about his symptoms against the record as a whole; this falls to the ALJ alone to make this determination. 20 C.F.R. §§ 404.1529(a), 416.929(a). A clearly articulated credibility finding supported by substantial evidence in the record will not be disturbed by a reviewing court. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). "[T]he ALJ's discretionary power to determine the credibility of testimony is limited by his obligation to place on the record explicit and adequate reasons for rejecting that testimony." *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988). If the ALJ decides not to credit such testimony, she must articulate explicit and adequate reasons for doing so. *Hale v. Bowen*, 831 F. 2d 1007, 1011 (11th Cir. 1987). A lack of an explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. *Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir.1982). That determination, however, may be affected by the lack of a fully developed record, and should be revisited on remand. For this, the ALJ must examine the entire record.

In the case at bar, the ALJ concluded that the Plaintiff "was a somewhat credible witness but that his testimony and allegations were not entirely credible as it relates to the important issue of the extent of his symptoms and the limitations they cause on work-related activity." (R. 189).

While the undersigned finds that the ALJ followed the appropriate procedure regarding the credibility determination, the undersigned has concerns regarding whether

the determination is supported by substantial evidence in the record, particularly in light of the failure of the ALJ to adequately describe and address the opinions of the treating physicians. Based upon the need to re-evaluate the medical opinions and records based upon the preceding analysis, it will be necessary for the ALJ to also re-evaluate the credibility of the Plaintiff. Therefore, on remand, the ALJ shall make new credibility assessment based upon a review of the record in its entirety.

VII. **CONCLUSION**

Based on the foregoing, this Court finds that the ALJ erred by not fully considering the opinion evidence of record and assigning a weight to the Plaintiff's treating physicians. Therefore, in accordance with the above, it is herby

**ORDERED AND ADJUDGED** that the Plaintiff's Motion for Summary Judgment, ECF No. [23], is **GRANTED**, and that Defendant's Motion for Summary Judgment, ECF No. [24], is **DENIED**. This matter is **REMANDED** to the Commissioner pursuant to 42 U.S.C § 405(g), with instructions for the ALJ to accurately review and fully assign a weight to the Plaintiff's treating physicians Drs. Gelblum, Tarras, and Miranda, re-evaluate the Plaintiff's residual functional capacity, and re-evaluate the Plaintiff's credibility as stated above.

**DONE AND ORDERED** in chambers in Miami, Florida on March 14, 2018

*Andrea M. Simonton*
ANDREA M. SIMONTON
CHIEF UNITED STATES MAGISTRATE JUDGE

Copies provided via CM/ECF to:
All counsel of record